IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PETER and KRISTIN VAN RIPER )<br>    7675 MacArthur Boulevard )<br>    Cabin John, Maryland 20818 )<br>                                                          )<br>    *Plaintiffs* )<br>                                                          )<br>    *v.* )<br>                                                          )<br>ADELE LOUISE BROCKMEYER )<br>    401 Allegheny Avenue )<br>    Towson, Maryland 21204 )<br>                                                          )<br>    *Defendant* ) | | Case No._____<br>**COMPLAINT** |

# **COMPLAINT**

This is a complaint for damages stemming from Defendant's breach of a maritime contract for the dockage of Plaintiffs' vessel in Defendant's slip.

## **PARTIES**

1.   Plaintiffs Peter and Kristin van Riper are citizens of the United States of America who reside within Montgomery County, Maryland.

2.   Defendant Adele Louise Brockmeyer is a citizen of the United States of America, who resides within Baltimore County, Maryland.

## **JURISDICTION AND VENUE**

3.   This action falls within the Court's admiralty and maritime subject matter jurisdiction pursuant to 18 U.S.C. § 1333.

4.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendant is subject to personal jurisdiction within this judicial district, all parties reside in this judicial district, and all of the wrongful acts complained of herein occurred in this judicial

district.

## INTRODUCTION

5.      This is an action for damages from a breach of a maritime contract for the moorage of a vessel in a slip, under the laws of admiralty.

6.      The contract at issue called for specific actions by the Defendant, and despite its one-sided nature clearly warrantied that Plaintiffs "shall have peaceful entitlement" and access to several privileges.

7.      Those privileges, including uninterrupted use of the space, facilities, and parking areas, continually were denied unilaterally by the Defendant, forcing the Plaintiffs to obtain alternative spaces at their own cost, with no reduction in charges levied by the Defendant.

8.      As shown below, there is no material dispute regarding either the contract's existence and applicability, or Defendant's multiple breaches and resultant damages suffered by Plaintiffs.

## STATEMENT OF FACTS

9.      In May 2016, Plaintiffs acquired the 35' sailing vessel *Fiver*, a 2003 Catalina 350 ("Vessel").  That Vessel remains jointly owned and titled between the Plaintiffs.

10.     Following its acquisition, Plaintiffs responded to an advertisement placed by Defendant for a marine slip available for lease.

11.     On May 12, 2016, Plaintiffs entered into a twelve-month dockage contract with Defendant for use of Slip 13 at Spa Creek Marina ("Slip") located at 300 Burnside Street, Annapolis, Maryland 21403.  (*See* Boat Slip Lease Agreement, attached as Exhibit A ("Agreement").)

12.     Under the terms of the Agreement, Plaintiffs were entitled to unfettered use of the

Slip beginning June 1, 2016, for twelve consecutive months in exchange for $6,600.00, payable in four quarterly payments to be made on June 1, 2016, September 1, 2016, December 1, 2016, and March 1, 2017, respectively. (*See id.*, p.1, ¶ III.)

13. The Agreement provided for automatic, annual renewal: "The lease shall automatically renew itself and become a yearly lease on June 1, 2017, [and] shall continue to renew on the June 1st anniversary date … unless notice of termination is given by January 1st of that year." (*Id.*, p.1, ¶ IIIA.)

14. In addition to use of the Slip, the Agreement entitled Plaintiffs to use of Spa Creek Marina's shared facilities and public areas, as well as "one parking space in the separate parking lot on Burnside Street." (*See id.*, p.1, ¶ II.)

15. On July 1, 2016, Plaintiffs took possession of the Slip.

16. In late October 2016, Plaintiffs were notified by Spa Creek Marina that, because of certain scheduled construction activities taking place, Plaintiffs would be required to vacate the Slip on or before November 1, 2016.

17. Defendant had actual knowledge of the scheduled construction activities—and of the unavailability of the Slip—prior to execution of the Agreement.

18. In fact, on May 11, 2016, before the lease was signed, Defendant represented that no such construction activities would take place during the term of Plaintiffs' lease.

19. Moreover, on May 11, 2016, Defendant represented to Plaintiff that, if construction interfered with Plaintiffs' tenancy, the Agreement—and Plaintiffs' requirement to pay for the Slip—would be put on hold.

20. From November 1, 2016, until May 17, 2017—more than half the initial term of the Agreement—Plaintiffs were forced to secure additional dockage for the Vessel due to

unavailability of the Slip.

21. Plaintiffs were also denied access to any of the other amenities provided for in the Agreement, including parking or use of any facilities at Spa Creek Marina.

22. Because of the immediate necessity and uncertain term of the additional dockage required for the Vessel during Spa Creek Marina's construction, the monthly cost Plaintiffs incurred was nearly twice the rate set forth their Slip at Spa Creek Marina.

23. Defendant neither adjusted the payment required under the Agreement to account for the Slip's unavailability nor reimbursed Plaintiffs for the additional dockage costs during Spa Creek Marina's construction. Rather, Defendant required Plaintiffs to pay the entire $6,600.00 annual contract amount for the Slip.

24. During Novemer and December 2016, Plaintiffs endeavored to locate alternative permanent dockage for the Vessel; however, Plaintiffs were unsuccessful in securing a new slip. As such, Plaintiffs allowed the Agreement to automatically renew for the twelve-month period beginning June 1, 2017.

25. After the conclusion of Spa Creek Marina's construction, Plaintiffs again took possession of the Slip on May 17, 2017.

26. After returning to the Slip in May 2017, Plaintiffs were able to access the Slip and utilize the other amenities provided by the Agreement and, as such, Plaintiffs allowed the Agreement to automatically renew for two more consecutive twelve-month periods beginning June 1, 2018, and June 1, 2019, respectively.[1]

27. Beginning in May 2019, Plaintiffs again began experiencing difficulties accessing

---

1 Although the second renewal period began June 1, 2017, it is important to note that Plaintiffs' became obligated for an additional annual term more than five months prior on January 1, 2017, by the Agreement's automatic renewal provision. (*See* Agreement, p.1, ¶ IIIA.)

the Slip and marina amenities to which they were entitled under the terms of the Agreement.

28. Access to the Slip and marina facilities required a four-digit access code ("Access Code"). Spa Creek Marina changed the Access Code annually.

29. Similarly, the Burnside Street parking space required an annual parking pass provided by Spa Creek Marina to Defendant ("Parking Pass").

30. In Spring 2019, Spa Creek Marina changed the Access Code and began requiring a new Parking Pass.

31. On May 24, 2019, Plaintiffs notified Defendant in writing that the Access Code had been changed and asked Defendant to provide the new Access Code. (*See 24 May 2019 Email from K. van Riper to A. Brockmeyer*, attached as Exhibit B.)

32. Plaintiffs also requested Defendant provide the updated Parking Pass. (*See id.*)

33. Defendant failed to respond to Plaintiffs' written request for the marina Access Code and Parking Pass.

34. On June 1, 2019, Plaintiffs made their first quarterly payment of $1,650.00 to Defendant.

35. Throughout June and July 2019, Plaintiffs contacted Defendant repeatedly to request the current Spa Creek Marina Access Code and Parking Pass.

36. Defendant failed to respond to any of Plaintiffs' repeated requests and, as a result, Plaintiffs were unable to enter the marina facilities or utilize the Burnside Street parking space.

37. As a result of Defendant's refusal to provide the Access Code and Parking Pass, Plaintiffs were denied access to the Slip and, worse, their Vessel.

38. Thus, despite having paid the first $1,650.00 quarterly installment on June 1, 2019, Plaintiffs were effectively deprived of everything to which they were entitled under the

terms of the Agreement.

39. In August 2019, Plaintiffs' inability to access the Slip and marina facilities became untenable and Plaintiffs took steps to secure alternative permanent dockage for the Vessel.

40. Plaintiffs were able to secure permanent alternative dockage at the Annapolis Yacht Club ("AYC"), 2 Compromise Street, Annapolis, Maryland 21401, that was both geographically and functionally comparable to the Slip.

41. On August 19, 2019, Plaintiffs informed Defendant that they had vacated the Slip and would not be returning.[2]

42. By August 31, 2019, another vessel had taken occupancy of the Slip. Thus, even if Plaintiffs had been provided access to the Slip, the Slip was unavailable for dockage of Plaintiffs' Vessel for the remaining term of the Agreement.

43. Plaintiffs incurred $12,411.49 in expenses associated with dockage at AYC from August 19, 2019, through May 31, 2020.

44. Thus, in addition to the $1,650.00 Plaintiffs paid Defendant for dockage services not received from June through August 2019, the total cost associated with mitigating Plaintiffs' losses stemming from Defendant's breach of the Agreement was $7,461.49.

45. The Defendant has not responded to communications or entreaties to resolve this issue, and on information and belief is intending to assert a claim for unpaid rental charges of the Slip after Plaintiffs departed and despite the presence of a new Vessel in that Slip.

**COUNT I - BREACH OF CONTRACT**

---

2 Incredibly, Defendant, who apparently was unable to respond to nearly three months of repeated requests for the Access Code and Parking Pass, replied to Plaintiffs' email notifying her they had vacated the Slip within a matter of hours.

46. The preceding paragraphs are incorporated into this count by reference.

47. The June 1, 2016, Boat Slip Lease Agreement (attached as Exhibit A) is a binding contract between the Parties.

48. Defendant breached the contract repeatedly.  Between June 1, 2019 and August 19, 2019, Defendant's breaches of the contract included but were not limited to:

- Failing to provide access to the Slip;
- Failing to provide access to the marina facilities;
- Denying Plaintiffs access to the Vessel;
- Failing to provide the Parking Pass; and
- Allowing another vessel to occupy the Slip beginning on or about August 31, 2019.

49. These actions breached numerous provisions of the contract, including p. 2, ¶ IV(d) ("agreement is for the use of pier space, shared amenities and common areas"); p. 1. ¶ II ("rental fee for this slip entitles the tenant to shared use of the swimming pool […], clubhouse […], one parking space […] and use of the public areas"); and p. 4. ¶ IV (p) ("Owner agrees that the Tenant shall have peaceful entitlement during his tenancy").

50. Those breaches are material as Plaintiffs were denied any access to or use of their Vessel or the Slip during those times and necessitated alternative slip rental.

51. Defendant further breached implied covenants of good faith and fair dealing by not responding to Plaintiffs' repeated requests for access, or taking any other actions to ensure they could enjoy use of the Vessel and the benefits of the Agreement.

52. Plaintiffs were not themselves in breach of the Agreement during those periods, and did not contribute to any of Defendant's failings.

53. Defendant's actions made continued use of the Slip by Plaintiffs after July 1, 2019 impossible, frustrating the entire purpose of the Agreement.

54. Plaintiffs sustained damages in the amount of $9,111.49 as a result of Defendant's breaches of the contract.

## PLAINTIFFS' PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Peter and Kristin van Riper demand judgment against Defendant, and pray the Court award Plaintiffs damages, costs, pre-judgment and post-judgment interest, reasonable attorney's fees, and any other relief the Court deems appropriate and equitable.

Respectfully submitted,

_/Michael Lewis/_
Michael Lewis Bar No. 18325[3]
The Lewis Firm PLLC
1300 I Street NW, Suite 400E
Washington, DC 20005
Tel: 202.340.6257
Fax: 888.430.6695
*Counsel for Plaintiffs Peter and Kristin Van Riper*

Scott M. Swafford (Bar No. 18693*)*
41 State Circle
Annapolis, Maryland 21401
Tel: (202) 670-8677
scott@theswaffords.org
*Co-Counsel for Plaintiffs*

---

[3] Mr. Lewis is currently in inactive status, but is coincidentally submitting with this Complaint a request for reactivation as per Standing Order 2016-04.